UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ALBERT GEORGE CURTIS and KATHLEEN CURTIS,<br><br>       Plaintiff,<br><br>   v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, MARYLAND CASUALTY COMPANY, and DOES 1 through 50, inclusive<br><br>       Defendants. | 1:06-CV-00053 OWW LJO<br><br>MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
|---|---|

### 1.   INTRODUCTION

This matter comes before the court on removal from the Superior Court of the State of California, County of Tulare. Plaintiffs filed a complaint in Superior Court as judgment creditors against Zurich American Insurance Company ("Zurich") and Maryland Casualty Company ("Maryland") to enforce a liability insurance policy and for breach of the covenant of good faith and fair dealing. Defendants removed the case to federal district court. Defendants then filed a motion for summary judgment. Plaintiffs have opposed the motion.

### 2.   PROCEDURAL BACKGROUND

Plaintiffs filed their complaint in Superior Court of the State of California, County of Tulare on November 15, 2005. (Doc. 1, Notice of Removal, Ex. A, Filed January 13, 2006.)  On

1

January 13, 2006, Defendants removed the case to federal district court. (*Id.*)  Defendants then moved for summary judgment on December 13, 2006.  (Doc. 16, Defendants' Motion for Summary Judgment, Filed December 13, 2006.)  On January 5, 2007 Plaintiffs opposed the motion.  (Doc. 25, Opposition.)  On January 12, 2007 Defendants filed their reply.  (Doc. 37, Defendants' Reply.)

### 3.  **FACTUAL BACKGROUND**

#### A.  Background

On or about July 1999, Defendant Zurich, acting through its subsidiary Maryland issued to Highland Enterprises, Inc. ("Highland") a special contractor's policy No. SCP 33645111 effective August 1, 1999 to August 1, 2000.  (Doc. 1, Notice of Removal, Ex. A, Complaint, ¶ 6.)  A proposed renewal policy of the same number was for the period August 1, 2000 to August 1, 2001.

Under the terms of the aforementioned policy Defendants agreed to defend and indemnify Highland with regard to any civil action or suit seeking damages for personal injury and property damage.  (*Id.* ¶ 9.)  The insurance coverage was effective for covered events that occurred *during the policy period.* (emphasis added.)

On or about January 29, 2002, Plaintiffs in an underlying lawsuit *Curtis v. Highland Enterprises, Inc, et. al,* Case No. 01-197549, filed a complaint for personal injury and property damage in Superior Court naming Highland as a Defendant.  (*Id.*, ¶ 10.)

Defendants Zurich and Maryland undertook the defense of Highland as its insured and employed the law firm of Vitale &

Burns to answer said complaint and respond to numerous pleadings and discovery. (*Id.* ¶ 13.)

Plaintiffs claim that in breach of its obligation under the insurance policy issued on August 1, 2000 to Highland, Defendants denied coverage and withdrew from providing legal defense in the underlying case. (*Id.* ¶ 15.) Defendants argue that Highland had failed to pay their insurance premiums and that as of the date of the accident on October 21, 2000, Highland had no insurance coverage. (*Id.* ¶ 29.) Highland's councel withdrew from the underlying case and thereafter the case went to trial on September 17, 2003. (*Id.* ¶ 16.)

The cancellation terms of the policy read as follows:

"Cancellation provision in the policy:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for non payment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first named insured's last mailing address known to us.
4. Notice of cancellation will state the effective

**3**

|   |   |   |
|---|---|---|
| 1 |   | date of cancellation.  The policy period will end |
| 2 |   | on that date. |
| 3 | 5. | If this policy is cancelled, we will send the |
| 4 |   | first named insured any premium refund due.  If we |
| 5 |   | cancel, the refund will be pro rata.  If the first |
| 6 |   | named insured cancels, the refund may be less than |
| 7 |   | pro rata.  The cancellation will be effective even |
| 8 |   | if we have not made or offered a refund. |
| 9 | 6. | If notice is mailed, proof of mailing will be |
| 10 |   | sufficient proof of notice." |

(Doc. 1, Notice of Removal, Ex. A, ¶ 4.04, Filed January 12, 2006.)  The parties point to no provisions in the contract governing a notice of cancellation from an agent of the insured.

On March 23, 2004, judgment was entered against Highland in favor of Plaintiffs for a total of $5,923,185.01.  (*Id.*)  The judgment has not been paid.  As a result, Plaintiffs filed a complaint against Defendants pursuant to Cal. Ins. Code § 11580 (b)(2)[1] as creditors against insurers on an insurance policy and for a breach of the covenant of good faith and fair dealing in denying coverage and a defense at trial.

**B.   Undisputed Facts**

On October 21, 2000, Plaintiffs George and Kathleen Curtis were injured in a motor vehicle accident.  (DSUF, No. 1.)

---

[1] Section 11580(b)(2) of the California Insurance Code provides that "whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

**4**

1  Plaintiffs George and Kathleen Curtis filed a lawsuit arising out
2  of that accident claiming negligence on the part of Highland
3  Enterprises, the City of Visalia, and others.  That lawsuit was
4  entitled Curtis v. City of Visalia, et. al., Tulare County
5  Superior Court Case No. 01-197549 (hereinafter the "Curtis v.
6  City of Visalia lawsuit.")  (DSUF, No. 2.)

7  Plaintiffs obtained a Judgment against defendants in the
8  Curtis v. City of Visalia action in the total amount of
9  $5,923,185.01. (DSUF, No. 3.)

10 Maryland issued an insurance policy to Highland as the named
11 insured for the policy period 8/01/99 to 8/01/00 ["the 1999
12 policy"]. The 1999 policy number is SCP 33645111.  (DSUF, No. 4.)

13 The Commercial General Liability Coverage Form, form number
14 760203 (Ed. 6-96), in both the 1999 Policy and the proposed 2000
15 renewal policy included the insuring language in Section I -
16 Coverages, Coverage A, Bodily Injury and Property Damage
17 Liability, which stated:

I. Insuring Agreement.
    a.    We will pay those sums that the insured becomes
           legally obligated to pay as damages because of
           "bodily injury" or "property damage" to which this
           insurance applies. We will have the right and duty
           to defend the insured against any "suit" seeking
           those damages. However, we will have no duty to
           defend the insured against any "suit" seeking
           damages for "bodily injury" or "property damage"
           to which this insurance does not apply... [para.]
    b.    This insurance applies to "bodily injury" and

**5**

1              property damage" only if (1) the "bodily injury"
2              or property damage" is caused by an "occurrence"
3              that takes place in the "coverage territory" and
4              (2) The "bodily injury" or "property that takes
5              place in the "coverage territory"; and (3) The
6              "bodily injury" or "property damage" occurs during
7              the policy period.
8  (DSUF, No. 5.)
9       The insuring language under the Commercial Umbrella Coverage
10 Form, form 982003 (Ed. 1-96), in both the 1999 Policy and the
11 proposed 2000 renewal stated, in pertinent part:
12 Section 1. INSURING AGREEMENTS
13 1.01 Coverage
14    A) We will pay on behalf of the insured those sums in
15       excess of the "retained limit" which the insured
16       becomes legally obligated to pay as damages for:
17            (1)  "Bodily injury" or "property damage"
18                 occurring during the POLICY PERIOD stated on
19                 the DECLARATIONS PAGE and arising out of your
20                 business, excluding advertising, publishing,
21                 broadcasting or telecasting done by or for
22                 you. [Emphasis added.]
23 (DSUF, No. 6.)
24    In the Common Policy Conditions forms, Condition A under the
25 11/85 edition of Form IL 00 17 in the 1999 policy and the 11/98
26 edition of Form IL 00 17 in the proposed 2000 renewal stated:
27    "The first Named Insured shown in the Declarations may
28     cancel this policy by mailing or delivering to us

**6**

1     advance written notice of cancellation."
2 (DSUF, No. 7.)
3     The Commercial Umbrella Coverage Form in both the 1999
4 Policy and the proposed 2000 renewal similarly stated in section
5 4.04(A):
6 4.04 Cancellation - Non Renewal
7     A) The first Named Insured shown on the Declarations
8     Page may cancel this policy by mailing to us advance
9     written notice of cancellation.
10 (DSUF, No. 8.)
11     The 1999 policy and the proposed 2000 renewal both listed
12 Highland Enterprises, Inc., as the named insured on the
13 Declarations page.  (DSUF, No. 9.)
14     Defendants sent a Notice of Cancellation of the 1999 Policy
15 to Highland Enterprises, Inc. on July 11, 2000 for nonpayment of
16 premiums.  (DSUF, No. 10.)
17     Highland Enterprises, Inc. never paid any amount for the
18 past-due premium.  (DSUF, No. 11.)  While Highland Enterprises
19 and Defendants were discussing possible reinstatement of the
20 policy at a lower premium rate, Defendants' computer system
21 generated a proposed renewal for what would have been an August
22 1, 2000 [sic] to August 1, 2001 policy period.  The insurer was
23 to be Maryland; Highland, was to be the named insured; and the
24 policy number was once again to be SCP 33645111.  (DSUF, No. 12.)
25     Defendants received a Cancellation Request signed by an
26 employee of HSS and dated July 12, 2000.  This Cancellation
27 Request stated the reason for cancellation was "agent request,"
28 and requested that the policy be "canceled flat," meaning at the

**7**

08/01/00 inception of the proposed 2000 renewal policy.  (DSUF, No. 14.)

The policy cancellation request was processed at 12:01 a.m. on August 1, 2000.  (DSUF, No. 15.)

Although one entry dated October 3, 2000, in Defendants' electronic Activity Detail uses the term "reinstatement", this refers to reinstating the information in the billing program for billing purposes only, not to reinstating any coverage afforded by the policies.  (DSUF, No. 16.)

No offer of reinstatement of coverage was communicated to Highland Enterprises, Inc., prior to the date of the Curtis accident, October 21, 2000.  (DSUF, No. 20.)

Defendants sent an invoice dated October 5, 2000, to Highland Enterprises, Inc., which stated, in part: "We regret you are no longer a customer.  A premium amount due of $29,285.00 is still owed.  We valued you as a customer and would like to bring closure to your account in a timely and positive manner."  (DSUF, No. 21.)

Highland Enterprises Inc. did not communicate any acceptance of any reinstatement of coverage afforded by any policy prior to the date of the Curtis accident, October 21, 2000.  (DSUF, No. 22.)

Highland Enterprises, Inc. never paid the $29,285.00 or any other amount for the past due premium.  (DSUF, No. 23.)

Highland Enterprises, Inc. never paid any consideration for reinstatement of the 1999 Policy or the 2000 Policy.  (DSUF, No. 24.)

**8**

### C. Disputed Facts

Hooper, Spuhler & Sturgeon Insurance Services ("HSS") acted as the agent for Highland Enterprises in procuring the insurance policy from Defendants. (DSUF, No. 13.)

The parties dispute that the policy cancellation was effective at 12:01 a.m. on August 1, 2000. (DSUF, No. 15.)

Defendants argue that only the billing statement was "reinstated" in October of 2000 as confirmed by the October 1, 2000 entry in Defendants' Activity Detail which states the action to be taken is "restart bill". (DSUF, No. 17.) Plaintiffs deny that the "restart bill" does not include reinstatement coverage and that coverage was reinstated on June 11, 2000.

Defendants contend that the fact that only the billing was "reinstated" in October of 2000 is without significance because each time a Direct Notice of Cancellation ("DNOC") for nonpayment of premium is rescinded, there is an entry in Defendants' Activity Detail which states, "DNOC Rescinded," and there is no such entry following the October 1, 2000, reference to "reinstatement." (DSUF, No. 18.) Plaintiffs claim that "DNOC Rescinded" does not always appear as an entry when coverage is reinstated after a notice of cancellation issues.

Defendants assert that the fact that only the billing was "reinstated" in October of 2000 is confirmed because each time a Direct Notice of Cancellation "DNOC" for nonpayment of premium is rescinded, there is an entry in Defendants' record keeping system Scratchpad which states , "Rein," and there is no such entry following the October 1, 2000, reference to "reinstatement". (DSUF, No. 19.) Plaintiffs however, contest the fact that a

9

1  Scratchpad entry for September 29, 2000 has the notation "rein"
2  in it.
3      Plaintiffs further claim that Defendants initially attempted
4  to cancel the 1999-2000 policy no. SCP 33645111 as of April 25,
5  2000.  (PSUF, No. 1.)  According to Plaintiffs the policy was
6  reinstated on June 11, 2000, because Highland Enterprises Inc.,
7  disputed the premium amount added as a result of the prior term
8  audit.  (PSUF, No. 2.)
9      Plaintiffs argue that a renewal policy was issued to
10 Highland Enterprises, Inc., by Defendants on June 29, 2000 and
11 that the renewal policy covered the period August 1, 2000 to
12 August 1, 2001.  (PSUF, No. 3 and No. 4.)  According to
13 Plaintiffs, no Notice of Nonrenewal was given to Highland
14 Enterprises, Inc. as required by Cal. Ins. Code § 678.1.[2]  (PSUF,
15 No. 5.)
16     Plaintiffs claim that Defendants canceled the renewal policy
17 at the request of an employee of HSS.  (PSUF, No. 6.)  According
18 to Plaintiffs, cancellation for a reason other than fraud or
19 nonpayment of a renewal policy requires 30 days notice plus an
20 additional 10 days if notice is mailed from another state.
21 (PSUF, No. 7.)  Plaintiffs assert that the Defendants did not
22 give Highland Enterprises, Inc. 30 days notice of the agent's
23 request to cancel the renewal policy and that therefore the
24 cancellation was ineffective.  (PSUF, No. 8.)

---

[2] Cal. Ins. Code § 678.1(b) provides that "a notice of nonrenewal shall be in writing and shall be delivered or mailed to the producer of record and to the named insured at the mailing address shown on the policy."

**10**

## 4.  **STANDARD OF REVIEW**

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id*. A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party

>will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986).  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.  A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to determine whether there is a genuine issue for trial. *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

### 5.  **DISCUSSION**

### A.  **Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction and may only preside over certain types of civil cases, as authorized by Congress and the United States Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A court has "federal question jurisdiction" over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Alternatively, federal district courts possess "diversity jurisdiction" over civil suits where the parties are citizens of different states and the dispute involves more than

**12**

$75,000.00. 28 U.S.C. § 1332. In determining which choice of law rules to apply, a federal court sitting in diversity jurisdiction applies the rules of the state wherein the district court sits. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).

Defendant Zurich is a corporation with its principal place of business in the state of New York. (Doc. 1, Notice of Removal, ¶ 3.) Defendant Maryland is a corporation with its principal place of business in the State of Maryland. (*Id.*, ¶ 4.) Plaintiffs are residents of the State of California. (*Id.*, ¶ 2.) The amount in controversy in the case is in excess of $75,000. (*Id*, ¶ 6.) The parties have brought suit in the state of California. California insurance law governs this case.

### B. Judicial Notice

"Courts may only take judicial notice of adjudicative facts that are 'not subject to reasonable dispute.'" *U.S. v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003)(quoting Fed. R. Evid. 201(b)). "Facts are indisputable, and thus subject to judicial notice, only if they are either 'generally known' under Rule 201(b)(1) or 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned' under Rule 201(b)(2)" *Id*. "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

Defendants have requested judicial notice of the following documents:

1. The Complaint originally filed in The Superior Court of the State of California, County of Tulare, Case No. 05-216885.
2. Plaintiffs Second Amended Complaint in the underlying action

**13**

1   *Curtis v. City of Visalia, et. al.,* Case No.01-197549.
2   3.   The Judgment on Special Verdict filed in Tulare County
3        Superior Court in the underlying action, *Curtis v. City of*
4        *Visalia, et. al.,* Case No.01-197549 on March 23, 2004.

Also, Plaintiffs have requested judicial notice of Statement of Uncontroverted Facts in *City of Visalia v. Zurich,* 03-cv-005435 AWI-LJO.  All the documents are matters of public record, the existence of which are judicially noticeable under Fed. R. Evid. 201(d).  This does not mean that disputed facts contained in such documents are necessarily established.

The parties' requests for judicial notice are **GRANTED**.

**C.   Effective Cancellation of the Policy**

Cal. Ins. Code § 676.2 governs the cancellation of commercial insurance policies.  According to the statute, after a policy has been in effect for more than 60 days cancellation by the insurer is effective if a notice of cancellation is provided in writing and mailed to the insured in accordance with Cal. Ins. Code § 677.2 based on one or more of several events which, includes non payment of premium, including any payment due on a prior policy issued by the insurer and due during the current policy term covering the same risks.  Cal. Ins. Code § 676.2 (2006).

Based on the record, it appears the insurer Maryland made two attempts to cancel the policy.  The first attempt was made by the Defendants and based on the undisputed fact that Highland had not paid a past due premium for the insurance policy.  As a result, Defendants mailed a written Notice of Cancellation of the 1999 policy to Highland based on non payment on July 10, 2000.

**14**

Under Cal. Ins. Code § 676.2, Defendants' notice of cancellation after the non payment by Highland is sufficient notice of cancellation of the commercial insurance policy.

Plaintiffs, however, dispute a separate attempt at cancellation by Highland's agent, HSS, in its capacity as Highland's broker. Defendants received a Cancellation Request signed by an employee of HSS and dated July 12, 2000. This Cancellation Request stated the reason for cancellation was "agent request," and requested that the policy be "canceled flat," meaning at the 08/01/00 inception of the proposed 2000 renewal policy. Plaintiffs argue that their agent, HSS did not have the authority to request the cancellation and that the cancellation was not effective.

Even if HSS did not have authority to request cancellation as Highland's broker[3] Plaintiffs do not dispute that Highland thereafter failed to pay its past due insurance premium, that Defendants sent Highland a written notice of cancellation as a result, and that a cancellation was processed on August 1, 2000.

---

[3] To effect a cancellation, it is necessary that the insured or the insurance broker to the insured indicate a present resort to the insured's privilege to cancel. *Glen Falls Ins. Co. v. Founders' Ins. Co.,* 209 Cal. App. 2d 157, 165 (Cal. Ct. App. 1962.) However, "an agent authorized to procure insurance is not thereby made the agent of the insured to cancel a policy." *K.C. Working Chemical Co. v. Eureka-Security Fire and Marine Insurance Company of Cincinnati,* 82 Cal. App. 2d 120, 129 (Cal. Ct. App. 1947) Authority to keep property insured is not authority to consent to a cancellation of insurance which would leave the insured wholly without insurance. *Id.* This rule does not apply where the broker has been specifically given the authority to accept cancellation on behalf of the insured. *see, Ferrar v. W. Assurance Co.*, 30 Cal. App. 489, 492 (1916). No evidence is provided whether Highland granted HSS cancellation authority.

15

Plaintiffs accident occurred on October 21, 2000, more than two years later.  Plaintiffs contest the effectiveness of cancellation but offer no evidence in law or fact to show that Defendants did not effectively cancel the policy in accordance with Cal. Ins. Code § 676.2.

### D.   Renewal of the Policy

Plaintiffs also argue that even though the policy was cancelled, the policy was subsequently renewed prior to the date of Plaintiffs accident.  "An insurance policy is a contract and, like all contracts, requires mutuality of assent." *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1384 (Cal. Ct. App. 1993.)  "Acceptance of an offer to renew an insurance policy may be found from the circumstances." *Id.*

Plaintiffs fail to provide any facts to show that Defendants made a renewal offer to Highland and that Highland accepted such renewal prior to Plaintiffs accident on October 21, 2000. Plaintiffs agree that Highland did not communicate any acceptance of any reinstatement of coverage and never paid any consideration to reinstate the insurance policy.  Highland never paid any of the past due premium.

The undisputed facts show that Highland and Defendants temporarily reinstated the insurance policy in June 2000 when Highland disputed the premium amount owed.  However, according to the facts, Defendants then resumed billing the account by sending a second cancellation notice.  Highland never paid any premium amount and Defendants ultimately processed a cancellation effective July 26, 2000.

An October 3, 2000 billing system entry uses the term

**16**

"reinstatement." This refers to reinstating the billing program for billing purposes only. It is undisputed that defendants sent an invoice dated October 5, 2000, to Highland Enterprises, Inc., which stated, in part: "We regret you are no longer a customer. A premium amount due of $29,285.00 is still owed. We valued you as a customer and would like to bring closure to your account in a timely and positive manner." (Doc. 24, Ex. H, Filed December 14, 2006.) This is evidence that the insurer confirmed the policy had been cancelled and sought payment for unpaid premiums from Highland.

Defendants sued Highland for the unpaid premiums in Fresno County Superior Court, Case No. 02 CE CG 00161 and obtained a default judgment. On November 20, 2000, Ron Cox, Highland's president called Maryland stating a need to reinstate the policy. Highland was advised that this could not be done without payment of the $29,285 judgment for unpaid premiums before a new policy could be issued.

Plaintiffs, do not dispute that Highland and Defendants were in negotiations for a lower premium for the policy, Plaintiffs argue that the temporary reinstatement of the policy during these negotiations constituted a renewal of the policy which resulted in coverage for Highland from August 1, 2000 to August 1, 2001 period. Further, Plaintiffs argue that Highland received a renewal policy on June 29. However, Defendants rejoin that the printout Plaintiffs identify as the "renewal policy" is instead a printout for billing purposes.

//
//

**17**

### 6. **CONCLUSION**

Plaintiffs have failed to provide sufficient evidence to raise a disputed issue of material fact that cancellation of Highland's insurance policy by Defendants was not effective and that there was no renewal of the policy prior to the date of Plaintiffs' accident.

Defendants motion for summary judgment is **GRANTED**

IT IS SO ORDERED.

**Dated:   March 28, 2007**                             **/s/ Oliver W. Wanger**
dd0l0                                                              UNITED STATES DISTRICT JUDGE